Dalton v. Bethlehem.

## DALTON v. BETHLEHEM.

The notice required to be given of sums expended for the maintenance of paupers should indicate the persons relieved, with sufficient certainty to establish their identity. But the omission of the christian name of the wife, included in a notice with her husband, or the addition of n or na to the name of Joan, or the substitution of the initial A. for the middle name Andrew, the parties being indicated as the children of parents who are sufficiently described, will not vitiate such a notice. But a declaration for the maintenance of Jane cannot be supported upon a notice of supplies furnished to James.

If the notice be of a larger sum than that declared for, no more than the sum declared for can be recovered.

It is sufficient for the perfecting of a settlement under the eighth mode pointed out by the statute of January 1, 1796, if the party be taxed each year for his poll, although the town, during one of the years, raised no highway tax.

After the lapse of twenty years the presumption is that a tax has been paid, if no evidence to the contrary is produced.

To rebut evidence that a tax had not been paid, the plaintiff summoned the clerk of the town, who said that the warrant was not in his possession, and he did not know where it was. He was then permitted to prove the contents of the warrant by one who had seen it.

To gain a settlement under the fourth mode, it is sufficient to prove the party in possession of the land, that being *prima facie* evidence of seizin.

Under this provision it is not necessary that the land should be taxed each year.

Cohabitation is evidence of marriage.

Dalton *v.* Bethlehem.

The relation of parent and child is established, *prima facie*, by evidence that the parties lived together, and recognized, by their acts, the existence of that relation.

To establish a settlement by the payment of taxes, it is not necessary that the taxes be paid the year they were assessed, but they must be paid before the settlement can be perfected.

Erroneous instructions, applicable to the evidence upon one count only, will not require the verdict to be set aside, if the evidence was applicable to another count sufficient to sustain the verdict.

ASSUMPSIT, for the support of certain paupers, alleged to have their settlement in Bethlehem. The declaration contained five counts.

The first was for supporting, from the 9th of October to the 16th of December, 1841, Oliver P. Shattuck, and Charlotte Shattuck, his wife, and Jane Shattuck, Harriet Shattuck, Oliver P. Shattuck, Jr., Joan Shattuck, Cyril A. Shattuck, Huldah Shattuck, and Nathan Wasson Shattuck, children of the said Oliver P. and Charlotte, at an expense of $185.15.

The notice in support of that count was dated on the 16th of December, 1841, and described the persons relieved as follows : " To the Town of Bethlehem : You are hereby notified that on the 9th day of October, last past, Oliver P. Shattuck and his wife, Jane Shattuck, Harriet Shattuck, Oliver P. Shattuck, Jr., Joan Shattuck, Cyril Andrew Shattuck, Huldah Shattuck, and Nathan Wasson Shattuck, the seven last mentioned being children of the said Oliver P. Shattuck, and all of the said children under the age of 18 years, were relieved," &c.

The defendants objected, because, 1. The persons named in the notice are different persons from those named in the count ; and, 2. The notice does not give the name of the wife of Oliver P. Shattuck, or if it does, gives a different name from the one contained in the count.

The second count alleged that from the 16th day of December, 1841, to the 12th day of March, 1842, the town

of Dalton maintained Oliver P. Shattuck and his family, consisting of himself, and Charlotte Shattuck, his wife, and six children, namely: Jane Shattuck, Oliver P. Shattuck, Jr., Cyril Shattuck, Joan Shattuck, Huldah Shattuck and Nathan Wasson Shattuck, at an expense of $63.77.

The notice was dated on the 12th day of March, 1842, and, among other persons relieved, named Cyril A. Shattuck, Joanna Shattuck, and Nathan W. Shattuck. The sums expended were stated to be $83.02, and a credit is given of $19.25, leaving the balance claimed the same that is demanded in the count.

The defendants objected that the names in the notice were not the same with those in the count, and that the sums alleged to have been expended were different.

The third count was for relieving and maintaining, from the 12th day of March, 1842, to the second day of June, in the same year, Oliver P. Shattuck and his family, consisting of himself, and Charlotte Shattuck, his wife, and six children, to wit: Jane Shattuck, Oliver P. Shattuck, Jr., Cyril A. Shattuck, Joan Shattuck, Huldah Shattuck, and Nathan Wasson Shattuck, and expended $39.43.

The notice was dated on the 2d day of June, 1842, and describes the persons relieved as Oliver P. Shattuck and his wife, James Shattuck, Oliver P. Shattuck, Jr., Cyril Andrew Shattuck, Joanna Shattuck, Huldah Shattuck, and Nathan Wasson Shattuck, all being children of O. P. Shattuck; and the sums expended were stated at $39.43.

The defendants objected, because the name of the wife of Oliver P. Shattuck is not contained in the notice; because no such person as James Shattuck is named in the count, nor is there such in the family, and because Joanna Shattuck is not named in the count.

The fourth was a general count, for supplies furnished, &c., from the 9th of October, 1841, to the 2d of June, 1842, to Oliver P. Shattuck and Charlotte, his wife, and Jane Shattuck, Harriet Shattuck, Oliver P. Shattuck, Jr.,

Joan Shattuck, Cyril A. Shattuck, Huldah Shattuck, and Nathan Wasson Shattuck, children of Oliver P. Shattuck and Charlotte, his wife. It alleged that except Harriet, who died on the 22d of October, 1841, all the persons named were in Dalton during the period described, and were relieved by the town at an expense of $307.60; that on the 16th day of December, 1841, notice was given, &c.

The fifth count was for $500, laid out and expended.

The exceptions above noted, that were taken to the notices, were all overruled by the court.

The plaintiffs claimed that the paupers named derived a settlement in Bethlehem from the father of Oliver P. Shattuck, Sherman Shattuck, who acquired it, 1st. By a residence of seven years in that town, and being there taxed during that period for his poll, and paying all taxes that were assessed against him. 2d. By a residence of four years, and owning real estate during all that time, and paying all taxes assessed.

It was proved that Sherman Shattuck resided in Bethlehem more than seven years from the year 1807, and it appeared, from the records of that town, that he was taxed for his poll from the year 1807 to the year 1817, including both years. In the year 1811, however, no highway tax was assessed upon his poll, nor upon any of the residents of the town. On all the non-resident lands a highway tax was assessed, and surveyors were chosen and sworn for the several districts.

Oliver P. Shattuck became of age on the 17th day of February, 1818.

The defendants objected, 1st. That the poll of Sherman Shattuck was not assessed for all the taxes of the year 1811; and, 2d. That he did not pay any highway tax for that year; which objections were not allowed by the court.

The plaintiffs produced evidence that Sherman Shattuck went upon a lot of land in Bethlehem in the year 1810, and continued in the undisturbed occupation of the same,

Dalton *v.* Bethlehem.

claiming to be the owner of it, until 1817, when he sold it, and his grantees have ever since had quiet possession.

The four years during which the plaintiffs contended that the land was of the value of $150, and that Sherman Shattuck paid the taxes, were the years 1813 and the three following.

The defendants objected to the evidence that was adduced to prove that Shattuck was the owner of the land, and requested the court to charge the jury that the plaintiffs were required to prove that he held it under a deed of conveyance in fee, or by disseizin; and if by the latter, that he held it adversely twenty years prior to the four years for which the party was taxed for it. But the court overruled the objection, and denied the motion, and also ruled that the evidence of Shattuck's ownership of the land was competent for them to consider, in connection with the fact that no evidence was produced of a title in another, and so charged the jury.

The plaintiffs assumed that twenty years having elapsed from the year 1817 to the time when the relief was furnished the paupers, the legal presumption was that Sherman Shattuck paid all the taxes assessed against him, in Bethlehem, from the year 1807 to 1817, and that the burden was upon the defendants to show the contrary by evidence. And the court so ruled, to which the defendants excepted.

Evidence having been produced that the taxes assessed against Sherman Shattuck, for the year 1815, or 1816, were not paid by him within the year for which they were assessed, the defendants contended that the payment, in such case, was not sufficient to answer the requirement of the statute. But the court ruled that if the tax was paid by Sherman to the town, and was by the town received before the time that Oliver P. Shattuck came of age, it was sufficient.

The court instructed the jury that in order to acquire a

settlement by owning land of the value of $150 four years, and paying all taxes assessed thereon, it was not necessary that the land should be actually taxed each year, if the party paid all the taxes that were assessed. To this the defendants excepted.

The plaintiffs introduced evidence that Sherman Shattuck and one Charlotte Shattuck cohabited as husband and wife from 1807 till the decease of one of the parties, and that Oliver P. Shattuck lived in the family, and was recognized and treated by them as their son, and so called by them. The defendants insisted that such evidence was incompetent to show the marriage of Sherman, and the legitimacy of Oliver P. Shattuck; but the court ruled that the evidence was competent to prove those facts.

In the course of the trial the defendants introduced the testimony of the highway surveyor for the years 1807 and 1808, to prove that Sherman Shattuck did not pay his highway taxes for those years; to rebut which the plaintiffs, having served the defendants with notice to produce the highway warrants of those years, introduced the town-clerk, who testified that they were not in his custody, and that he .did not know where they were. The plaintiffs then examined a witness, who testified that he saw the warrants among the papers of the town-clerk in May, 1845, and upon them found the name of Sherman Shattuck, and that his taxes were crossed. To the admission of this evidence the defendants excepted.

A verdict was returned by the jury for the plaintiffs, which the defendants moved to set aside.

*Fletcher* and *Bellows*, for the plaintiffs.

*Wells* and *Young*, for the defendants.

GILCHRIST, J. To lay the foundation of this action, which is brought by the town of Dalton against the town

of Bethlehem, for supplies furnished paupers alleged to be a legal charge upon the defendant town, it is made necessary by the statute that the plaintiffs give notice to the defendants, stating the sums expended by them for the relief of such poor persons, &c. N. H. Laws 305. The only purposes for which such notice is required to be given obviously demand that the persons relieved should be indicated with such precision as to leave no reasonable doubt of their identity upon the face of the notice itself. It has accordingly been determined, that although the party is not sufficiently denoted by the words indicating her to be the daughter of one sufficiently described, yet it would have been sufficient to style her the eldest daughter, or the youngest daughter, since such an epithet would have identified the person beyond all reasonable doubt, under ordinary circumstances. *Chichester* v. *Pembroke,* 2 N. H. 530. Upon the principle of this *dictum,* it is plain that it is a sufficient description of the wife of Oliver P. Shattuck simply to denominate her as such, with or without the use of her christian name. There seems, therefore, no just ground for the exception that the name of the wife is omitted in the notice.

Are the other persons sufficiently described in the notice? Cyril Andrew is there named Cyril A., and Joann is abbreviated to Joan. The additional *n,* in the last name, does not appear to change the sound, and we think that it would be difficult, in a plea of abatement, to show the exception as to that name to be well founded; and as to both the names, there is a strong presumption that there should not be, in addition to the seven persons described as the children of Oliver, two more, of whom one should bear a name so like to " Cyril Andrew," as the name of " Cyril A." would be, and another bearing a name so like " Joan" as to be distinguished from it only by the reduplication of the final consonant. These exceptions to the first count must, therefore, fail; and so do

those to the second count, for similar reasons, the variances being so extremely small; and the parties in both cases being described as the children of Oliver P. Shattuck, —the description seems sufficiently certain, even if the name of *Joan* is different from *Joanna*, and the name of *Cyril A.* is different from that of *Cyril*. *Keene* v. *Meade*, 3 Peters' S. C. 1; *Franklin* v. *Talmadge*, 5 Johns. 84; *Roosevelt* v. *Gardner*, 2 Cow. 463.

Under the third count the plaintiffs cannot recover, because there is a material variance between the count and the notice; the former including Jane Shattuck among the family relieved, and the latter wholly omitting that name, and including that of James, who is not mentioned in the count. Had the notice and the count specified the sums expended for each pauper, an uncertainty might have been avoided, which, in the present forms of both those papers, renders it impossible to determine for what sum the plaintiff should recover. Nothing can be recovered for Jane, for she was not named in the notice, and James, who was so named, is omitted in the writ; and having been probably inserted through mistake in the notice, the evidence does not apply to such a case.

The sums specified in the notice which served as the foundation of the second count seem to be the same, but differently stated. If the notice contains the description of a larger sum than that named in the writ, the recovery must evidently be limited to the sum named in the writ.

Under the provisions of the statute of January 1, 1796, " any person of the age of twenty-one years, who shall hereafter reside in any town or district within this State, and, being taxed for his poll for the term of seven years, shall pay all taxes legally assessed on his poll and estate during the said term, shall be an inhabitant in said town or district." Under this provision it has been held that a settlement does not attach, unless the party shall have been actually taxed for his poll each year; and the reason

assigned is, that the towns may, by omitting to tax poor persons, avoid becoming afterwards chargeable with their support. *Henniker* v. *Weare*, 9 N. H. 573; *Burton* v. *Wakefield*, 4 N. H. 47. The omission of the town, during one of the seven years, to raise a highway tax in the ordinary mode, there being no suggestion that the other taxes were not regularly assessed upon the polls and estates of the inhabitants, does not take the case of Sherman Shattuck out of the operation of the law. He was in fact taxed seven successive years for his poll, in common with the other inhabitants, and that appears to have been sufficient, if he paid the sums assessed.

It has been held that after the lapse of twenty years a presumption arises that such taxes have been paid. *Hopkinton* v. *Springfield*, 12 N. H. 328. So that, unless the defendants can show something tending to rebut that legal inference, they must be concluded by it; and the instructions given by the court to the jury were, upon this point, also correct. The case of taxes is supposed to bear an analogy to bonds, judgments, &c., which, after a lapse of twenty years, are supposed to have been paid.

The evidence admitted, after notice to the town to produce the highway warrants, so far as it tended to show that the defendants themselves had suppressed them, was clearly competent. Gr. Ev., secs. 31, 37. It was also admissible under the general rule, which admits proof of the contents of instruments in general that have been lost. Gr. Ev., sec. 509. The rule embraces records as well as deeds and other papers.

Another exception was taken to the evidence which was produced to prove the settlement of Sherman Shattuck, under the fourth mode pointed out by the act before cited, of January 1, 1796, and which provides that any one having real estate of the value of one hundred and fifty dollars, in the town where he dwells and has his home, and shall, for the term of four years, pay all taxes duly assessed on

his poll and the estate aforesaid, shall thereby gain a settlement.

Under this act various decisions have been made by the Superior Court, as to the kind of interest the party must have in order to gain the settlement. In *Charlestown* v. *Acworth*, 1 N. H. 62, it was held that it must be an estate of freehold at least, either by seizin or disseizin. It is in evidence that he was in possession of the land, and there is no evidence that he recognized another owner, or that another person claimed it. We are certainly not required to look for further evidence that he himself was the owner, than this common presumption of title in fee simple—at least until some proof is offered to rebut that presumption. That evidence was, therefore, properly admitted, and the instructions which were given as to its effect were correct.

As to the instruction that it was not necessary that the land should be taxed each year, in order that he should gain a residence by means of owning and paying taxes upon it, the case of *Rochester* v. *Chester*, 3 N. H. 349, is directly in point to sustain it.

Cohabitation is evidence of a state of marriage, for the purpose of establishing all the ordinary legal incidents of that condition. A criminal intercourse and a criminal intent are not to be presumed in such cases. *Young* v. *Foster*, 14 N. H. 114.

The same presumption exists that one who is received and acknowledged in a family as a son is really such. Gr. Ev., sec. 28.

There is nothing in the statute that settles the time within which any of the taxes must be paid in order to perfect the settlement. This cannot be consummated till the taxes are actually paid; and, therefore, it was necessary, in order to entitle the pauper, Oliver P. Shattuck, to the settlement of his father, that this should be done before he arrived at the age of twenty-one years. The instructions appear to be open to no exception, except

those which regarded the notice which was the foundation of the fourth count, and it is rather unusual to find a case in which so many points occur which have been the subject of express decision in our own courts.

It has been suggested that the act of January 14, 1837, provides, that after a notice has been given of the moneys expended for the maintenance of the pauper, any further sums expended within one year afterwards may be recovered without any further notice ; and that, therefore, under the fourth count, there may be recovered indemnity for all the expenses specified in the defective notice which served as the foundation for the third, since all these expenses were within a year from the 12th day of March, 1842, the day of the giving of the last good notice. This seems to render the instructions, as to the notice on which the third count was founded, of no importance, and judgment may be rendered on the verdict, notwithstanding the error. There must, therefore, be

*Judgment on the verdict.*