## NEEL v. CARSON.

EQUITY:  *When taxes, etc., refunded to fraudulent purchaser.*
When money paid by a fraudulent purchaser of land at an administrator's sale is
used in paying the debts of the estate, it and the taxes paid by him after his
purchase, less the value of the rents, must be refunded to him.

APPEAL from *Jefferson* Circuit Court in Chancery.
Hon. J. A. WILLIAMS, Judge.

*M. L. Bell* for Appellant.
*Met. L. Jones* for Appellees.

BATTLE, J.  The object of this action is to set aside an
administrator's sale and to recover the rents and profits derived
from the land sold.  The facts in the case are substantially as
follows:  Samuel Carson died on or about the first day of
September, 1875, seized and possessed of a valuable plantation
and body of lands lying in Jefferson county, and considerable
personal property, and left a last will and testament.  He
bequeathed to his son, Andrew C. Carson, $5000, and directed
it to be paid out of the first money received; then directed that
his debts be paid ; and after the payment of his debts and the
legacy of $5000, bequeathed and devised one-half of the
residue of his estate to Andrew C. Carson and the other half to
his grandchildren, Grant A., Samuel A. and Henry N. Vaughan;
and directed that Andrew C. Carson remain in possession of
the plantation, and the live stock and other personal property
thereon, and use the same until his estate should be fully
administered and divided, the son paying a reasonable rent
therefor; and appointed Andrew C. Carson executor.  The
will was proven and admitted to probate by the Jefferson
probate court on the 6th of September, 1875; and letters tes-

tamentary were issued to Andrew C. Carson on the 14th of said month, he having made the necessary affidavit and bond.

On the 15th of October, 1875, Grant A., Samuel A. and Henry N. Vaughan being minors, James F. Vaughan, their father, was appointed their guardian, and qualified and entered upon his duties as such. On the 25th of October, 1875, Andrew C. Carson, by deed, conveyed to and settled upon his wife, Minnie Carson, all his property of every nature, kind and description, especially the property bequeathed and devised to him by his father, Samuel Carson. The deed was filed for record on the 8th of November, 1875. Pursuant to the will, Andrew C. Carson took possession of the Carson place, the plantation owned by Samuel Carson at the time of his death, and the personal property thereon, and attempted to cultivate the plantation.

To enable him and his wife to do so during the years 1877 and 1878, C. M. Neel, under an agreement with them, furnished them with money and supplies, and they secured him in the payment of such amount as should be due him therefor by a deed of trust, bearing date the 6th of February, 1878, thereby mortgaging to him one undivided half of said plantation and lands, certain personal property therein described, and the crops raised by them on the Carson place in the year 1878. On the 22d day of November, 1878, their indebtedness for these moneys and supplies amounted to the sum of $6914.33. The cotton crop was delivered to Neel to be sold, with the understanding that the proceeds of the sale should be appropriated to the payment of this indebtedness so far as they would extend, which was done, and there still remained a balance of $3828.15 due and unpaid.

In April, 1878, Andrew C. Carson filed his second annual settlement with the estate of Samuel Carson, deceased, and showed therein a balance of assets in his hands, unadministered, amounting to $2846.98. To this settlement J. F. Vaughan,

as guardian of the Vaughan devisees and legatees, filed exceptions, thereby and therein stating and insisting that Andrew C. Carson had failed to charge himself in his settlements with various amounts with which he should be charged, and had wrongfully and unlawfully given himself credits to which he was not entitled, which together with the sums with which he should be charged and failed to charge, amounted in the aggregate to the sum of $2674.61; and that he had not been and should be charged in addition thereto a reasonable sum for the use of the personal property belonging to the estate of his testator which had been used by him. These exceptions, it appears, were not disposed of until after the death of the executor.

On the 1st of July, 1878, Andrew C. Carson died, and on the 28th of August, 1878, C. M. Neel administered on his estate. On the 2d of July, 1878, J. B. Trulock was appointed administrator *de bonis non*, with the will annexed, of the estate of Samuel Carson, deceased. On the 21st of October following Trulock, as such administrator, filed a petition in the Jefferson probate court for an order to sell the lands of the estate of Samuel Carson, deceased, to pay the debts of the estate and a balance due on the $5000 legacy, stating therein, among other things, that Andrew C. Carson had appropriated the personal property of the estate to his own use and accounted for it at its appraised value in his settlements, and that at the filing of his last settlement there was a balance of assets in his hands to the amount of $2846.98; that this amount was not sufficient to pay the $5000 legacy; that the amount due on the claims allowed against the estate, including interest, was about $2700; and that there were no assets belonging to the estate to pay this amount and the balance due on the legacy, except the lands. On the same day J. F. Vaughn, as guardian, filed his remonstrance against the granting of Trulock's petition, and as his reason for so doing stated that the personal prop-

erty and the rents of the land, which had gone into the hands of Andrew C. Carson, executor, and the rent of the Carson place for 1878, were sufficient to pay the debts of the estate and the legacy. About the last of October or first of November, 1878, Mrs. Carson agreed with Neel to sell him her interest in the lands of the estate of Samuel Carson, deceased, for the sum of $3250, which Neel agreed to place to her credit on her account, and to pay her any balance thereafter due her on final settlement; and she further agreed to file a petition in the Jefferson probate court, asking for the same relief prayed for in Trulock's petition, which she did on the 2d day of November, 1878, stating therein that Andrew C. Carson had transferred to her the $5000 legacy, and that no part of it had ever been paid; that Andrew C. Carson had died leaving three minor children his only heirs and distributees at law, of whom she is the mother and natural guardian; and that the personal assets of the estate of Samuel Carson, deceased, were not sufficient to pay his debts and the legacy. On the 6th of December, following, she conveyed to Neel one undivided half of the lands of the estate of Samuel Carson, deceased, and covenanted with him that she was seized, in fee simple, of the one undivided half of said lands; that she had a lawful right to convey the same; and to warrant and defend the title thereto unto Neel and his heirs against the lawful claims and demands of all persons. Neel gave her credit on her account with him for the $3250, and there still remained a balance of $578.15 due him from her. On the 4th day of November, 1878, J. F. Vaughn, as guardian of Samuel A. Vaughn, Grant A. Vaughn and Henry N. Vaughn, in consideration of $3000 to be paid and a pair of mules to be delivered to him by Neel, in writing agreed with Neel to sell and did undertake to sell and convey to him (Neel) all the interest of his wards in and to the estate of Samuel Carson, deceased, and to withdraw his exceptions and remonstrance and join Trulock in his petition for an order

to sell lands. He withdrew his exceptions and remonstrance, and on the 11th of November, 1878, filed a petition in the Jefferson probate court, asking for an order directing Trulock, as administrator, to sell the lands of the estate of Samuel Carson, deceased, to pay debts and the legacy, stating it as his belief that such sale would be to the interest of all parties concerned.

On the 11th of November, the Jefferson probate court ordered Trulock, in his capacity as administrator, to sell the lands of the estate of Samuel Carson, deceased, describing them, by public auction, on a credit of six and twelve months. These lands were appraised by three appraisers at $5000. They contained 1207 acres; were reasonably worth $15,000, and were of the annual rental value of about $2000. Trulock, in his capacity of administrator, sold them, on the 19th day of December, 1878, by public auction, to C. M. Neel, on a credit of six and twelve months, for the sum of $3400, and on the same day conveyed them to him. The sale was reported to the Jefferson probate court and confirmed. On the 14th of July, 1879, Trulock, as such administrator, filed a settlement in the Jefferson probate court, and reported therein that he had collected the $3400 of Neel, and with it paid the debts of the estate of Samuel Carson, deceased, and that there was a balance of $122.37 in his hands, out of which the costs, incurred by the filing of his settlement, would have to be paid, and that this sum was claimed by Neel.

On the 28th of December, 1878, Neel gave these lands to his sister, Mrs. Anna P. Burks, and conveyed them to her, and thereafter she collected the rents of the same. About the 1st of December, 1878, Neel proposed to give Mrs. Carson a house and lot, in Pine Bluff, worth $1000. Mrs. Carson, thereafter, declined taking this house and lot, and proposed buying certain lands, known as the Cole place, of Neel, which cost him $2500, and Neel sold them to her for $1500, deducting $1000

for the house and lot he proposed giving her, and she gave him her five notes for $300 each, for purchase money, due in one, two, three, four and five years. About the 10th or 18th of February, 1879, she became dissatisfied with the Cole place, and proposed to Neel to cancel her purchase of the same, if he would give her $500 for her stock. The purchase was canceled; Neel gave her the $500 for her stock, and conveyed by deed of gift, to her, the house and lot in Pine Bluff, known as the Burks place, and gratuitously gave her credits on her account with him.

Minnie Carson, for herself, and as next friend of her children, Samuel Carson, Andrew Carson and Rose Ella Carson, minors under the age of fourteen years, and Patrick Vaughn, as next friend of Samuel Vaughn, Grant A. Vaughn and Henry N. Vaughn, minors under the age of fourteen, J. F. Vaughn, their father and guardian, having died, brought this suit against Charles M. Neel, T. F. Burks and Anna P. Burks, his wife, and J. B. Trulock, late administrator *de bonis non* with the will annexed, of the estate of Samuel Carson, deceased. They allege in their complaint that the order for the sale of the lands and the deed executed by Mrs. Carson to Neel on the 6th of December, 1878, was procured by fraud, stating the facts and circumstances constituting the fraud, and ask that the purchase of the Carson place by Neel be declared to have been made in trust for Minnie Carson and her children and void as to Samuel Vaughn, Grant A. Vaughn and Henry N. Vaughn, and that upon the payment of any balance found due to Neel upon an account being stated, the lands be decreed to be the property of plaintiffs; that partition be made between Minnie Carson and her children and the Vaughns and Neel, if he has any interest; that the deed from Neel to Mrs. Burks be declared void; that, if the court should find the deed of Mrs. Carson to Neel valid, the Cole place and the value of the personal property received by Neel from her be decreed to her; and for general relief. Neel answered.

On the final hearing, the court below held the order for the sale of the lands by Trulock, as administrator, and the sale made in pursuance thereof, the deeds of Neel to Mrs. Burks, of Mrs. Carson to Neel, of Neel to Mrs. Carson to Burks' place, and of Vaughn, in his individual capacity, or as guardian, to Neel, to be void, and decreed that they be set aside, and appointed a master to ascertain and report to the court the rents of the Carson place for each year from the time Neel took possession of it, and the necessary repairs made and taxes paid on it by Neel or his grantees, and the value of the cotton, corn, cotton seed, live stock, farming implements and other personal property received from Mrs. Carson by Neel, and the rental value of the Burks place and the taxes paid and repairs made thereon by Mrs. Carson, the rental value of the Carson place for 1875, the amount of money paid by Neel for purchase of the land at the administrator's sale and how much thereof was returned to him, and the facts connected with the deed of trust executed by Mrs. Carson and her husband to Neel, what was due from Mrs. Carson to Neel, and what became of the crops raised on the Carson place in 1878. And the defendants appealed.

The legacy of $5,000 is not involved in this action. The validity of the deed of Andrew C. Carson to his wife, Minnie Carson, is not disputed. It is contended by Mrs. Carson that the deed executed by her to Neel, dated the 6th of December, 1878, was procured by fraud, and to prove that it was she testified that Neel said he could take the Carson place and everything she had; but that he would sell her the Cole place for two thousand dollars; and that she purchased it. This, if true, is no evidence that she was deceived by him, or misinformed, or that she acted in ignorance of the facts when she executed the deed. This is all the evidence that was introduced to show that this deed was procured by fraud, and it is not sufficient for that purpose.

Her subsequent transactions with Neel go to show a ratification by her of the sale made by her to Neel of the one undivided half of the Carson lands claimed by her under the deed executed to her by her husband.

It is contended by appellees that the order for the sale of the Carson lands, made by the Jefferson probate court, was procured by fraud. If this be so, the sale should be vacated and the purchaser's title annulled. *Adams v. Toomer, 44 Ark., 271.* Is it true? When Samuel Carson died he was the owner of considerable personal property, consisting of mules, horses, cattle, hogs, farming implements and other property, valued by appraisers selected by his executor for that purpose at $2507. There was no evidence introduced to show what disposition was made of it, except so much thereof as the appraisement and settlements of the executor show was appraised at various sums amounting in the aggregate to $1335. Andrew C. Carson, in a settlement filed a short time before his death, accounted for this property, which consisted of two horses, and the cotton, corn and hay on hand at the time he took charge of the estate, saying that the horses had died, and the corn and hay had been consumed by the using, and that the cotton had been sold and he had charged himself with the proceeds of the sale. The remainder of the personal property, of the appraised value of $1172, is not accounted for, and there is no evidence that it was incapable of being identified as the specific property and estate of Samuel Carson, deceased. Trulock, in his application to the probate court for an order to sell, says Carson had converted and appropriated it to his own use; but the will authorized and directed him to take possession of the plantation and personal property thereon and use the same until the estate was settled and the property divided, and required him to pay a reasonable rent therefor. The last settlement of Carson shows that there were assets to the amount of $2846.98 still remaining in his hands. The property appraised at $1172 was a part

Neel v. Carson.

of those assets. At the time 'Trulock took charge of the estate the rent of the plantation for 1878, the annual rent of which was reasonably worth $2000, was uncollected, and the crops of that year were ungathered. There was no evidence that Trulock ever collected or attempted to collect it.

J. F. Vaughan, as guardian, remonstrated against the sale, because the personal property, and the rents of land, which had gone into the hands of Andrew C. Carson, as executor, and the rents of the land for 1878, were sufficient to pay the debts of the estate and the legacy. The amount remaining unpaid on the debts was about $2700, including interest. Thus matters stood when Neel purchased of Mrs. Carson the one undivided half of the Carson lands claimed by her, and of J. F. Vaughn, as guardian, the interest of his wards, and employed them to join Trulock in an application for an order to sell the lands. According to the facts proved, Neel, presumed to know the law and to intend the natural consequences of his own acts, stands in the attitude of employing Vaughn to disregard and violate a sacred trust and duty he owed his wards and children, for the purpose of buying the Carson lands at a sacrifice. Vaughn withdrew his exceptions to the settlement and his remonstrance, and he, as guardian, and Mrs. Carson, filed their respective applications, as they agreed to do. The natural consequence was, the court, seeing all the parties in interest, or their legal representatives, asking for the order of sale, made it. The result was, a large body of lands, containing 1207 acres and reasonably worth the sum of $15,000, having a valuable plantation on them, of the annual rental value of about $2000, was sold *in solido*, on a credit of six and twelve months, to C. M. Neel for the sum of $3400, to pay an indebtedness of about $2700. Our conclusion is, the order was procured by fraud; that Mrs. Burks, claiming under a deed of gift, is not an innocent purchaser; and that the sale should be set aside.

Refunding
taxes, etc.

The pretended sale made by Vaughan of the interest of his wards being without the authority of law is void. The administrator's sale being set aside, the Vaughn children are entitled to one undivided half of the Carson lands. But he who seeks equity must do equity. The money paid by Neel for the land purchased at the administrator's sale having been used to pay the debts and expenses of the administration of the estate of Samuel Carson, deceased, they should pay one-half of the amount so used and six per cent. interest thereon from the time of payment thereof by Neel. *Neblet v. McFarland, 92 U. S., 101.* The administrator's sale being set aside, Mrs. Burks holds the other half interest conveyed by Mrs. Carson to Neel, and succeeds to the right of Neel to recover and receive the half of the money so used in paying debts and expenses of administration. *Tomkins v. Seely, 29 Barb., 212; Sheldon on Subrogation, sec. 34,* and authorities cited. She is also entitled to recover of the Vaughn children one-half of the taxes paid by her and Neel on the lands after the administrator's sale, and should be charged with and required to pay to the legal representatives of the Vaughn children, one-half of the rents of the Carson place and lawful interest.

The court erred in setting aside the deeds of Neel to Mrs. Burks, of Mrs. Carson to Neel, and of Neel to Mrs. Carson to the Burks place, and in directing the master to ascertain and report the value of the cotton, corn, cotton seed, live stock, farming implements, and other personal property received by Neel from Mrs. Carson, and the rent of the Burks place and the taxes paid and repairs made thereon by Mrs. Carson, and the rental value of the Carson place for 1875, and the facts connected with the deed of trust executed by Mrs. Carson and her husband to Neel, and what became of the crops made on the Carson place in 1878.

The decree of the court below, in so far as it is inconsistent with this opinion, is reversed, and in other respects is

affirmed; and this cause is remanded with instructions to the court to enter a decree herein in accordance with this opinion, and for other and further proceedings.